[Civ. No. 7400.   Third Dist.   Jan. 29, 1948.]

GEORGE E. CALLISCH, Respondent, v. G. V. FARNHAM, Appellant.

Floyd Merrill for Appellant.

Roy A. Weaver for Respondent.

PEEK, J.—The present controversy arises out of a written option agreement for the sale of certain real property by plaintiff to defendant. The pertinent portions of the agreement provide as follows:

"WITNESSETH: That for and in consideration of the sum of Two Hundred Fifty Dollars ($250.00) to him in hand paid, the receipt whereof is hereby acknowledged, the party of the first part hereby agrees to hold until the 18th day of January, A.D. 1946 (time being of the essence of this option) subject exclusively to the order of the party of the second part the following described real property to-wit:

(Describing it)

"Or to transfer and convey said property to the party of the second part by grant deed free from all encumbrances not hereinafter set forth at any time within the above prescribed time to the said party of the second part at and for the price of Nineteen Thousand Five Hundred Dollars ($19,500.00) lawful money of the United States, payable on the following terms:

"a. Six Thousand Dollars ($6,000.00) upon the *exercise* of this option by the party of the second part:

. . . . . . . . . .

"If the party of the second part of this option shall duly *elect to exercise* this option, then, and in that event, the amount paid as consideration for this option shall be credited upon the said purchase price; but if the party of the second part of this option shall fail duly to *exercise* this option within the time prescribed therefor, then, and in that event, the amount paid as consideration for this option shall be retained by the said party of the first part in full satisfaction for the aforesaid time.

"The party of the first part shall have ninety (90) days after the *election to exercise* this option by the party of the second part within which to perfect title." [Italics ours.]

On January 16, 1946, plaintiff received a letter from defendant, optionee, dated January 14, 1946, which reads in part as follows:

"The purpose of this letter is to give you formal notice that I intend and I have elected to go through with and complete our pending deal on the Camp Lowe property. . . . I shall expect you to let me know when you have your title to both the real and personal property perfected, so that I may have the title examined before the completion of the deal."

In response to this letter plaintiff wrote to defendant on January 17, 1946:

"In reply to your letter of January 14th, this is to advise you that I will live up to my obligations under the option and that it will be necessary for you to do likewise.

"This letter is written to forestall any possible impression of waiver of any of my rights by reason of anything contained in your letter of January, 14th."

The defendant, however, made no tender of the above mentioned sum of $6,000 on or prior to January 18, 1946. Plaintiff thereafter instituted an action for declaratory relief and to quiet title to the property in question. The defendant answered and by way of cross-complaint sought specific performance of the alleged contract of sale.

The trial court found in favor of plaintiff and cross-defendant that the option terminated by reason of the failure of the defendant and cross-complainant to pay the $6,000 to plaintiff on or before January 18, 1946, and entered judgment quieting title in the plaintiff. From this judgment the defendant has appealed.

The primary issue on this appeal is whether or not the defendant's act of writing and mailing the above letter to the plaintiff was a sufficient acceptance of the offer according to the terms of the option contract so as to create an executory contract for the sale of the property.

Appellant in his argument attempts to distinguish the terms "election to exercise" and "exercise" as used in said contract. It is defendant's contention that his letter dated January 14th to plaintiff was his "election to exercise" his right under the agreement; and having so informed plaintiff that he had elected to exercise the right given him under the agreement to buy the property, it then became incumbent upon plaintiff to clear the title thereto during the 90-day period therein agreed upon to enable plaintiff to transfer the same to defendant by a good and sufficient deed free and clear of any cloud upon the title, and that not until such time did it become necessary for defendant to "exercise" the option by paying the $6,000 to plaintiff and accepting the deed.

However, from our examination of the contract it does not appear that the use of the terms "exercise" and "election to exercise" can be distinguished. Rather it would appear that such terms are used interchangeably therein and with the same intent and meaning. Particularly does this conclusion

appear to be correct by reason of the fact that in the paragraph previously quoted these two terms are used with reference to the same act.

■ The act or acts which constitute an acceptance of an offer tendered in an option agreement are determined by the terms of the contract itself, and where, as here, the acceptance or the "election" or the "exercise" of the option is by the terms of the contract to be made in a particular manner, it must be strictly so made in order to constitute a valid acceptance. (*Flickinger* v. *Heck,* 187 Cal. 111, 113-114 [200 P. 1045].)

■ If, as contended by appellant, he could "elect to exercise" the option on or before January 18th, by merely giving notice of his so doing, but need not "exercise" the option until some future indefinite time, then the clause by which plaintiff agreed to "hold until the 18th day of January, A.D. . . . subject exclusively to the order of" the appellant, becomes meaningless, since by merely giving notice of his "election" to exercise the option, or his intention to accept as that phrase is interpreted by him, the appellant might extend the obligation of the plaintiff to hold the property beyond January 18th, at which later time appellant might "exercise" the option. On the other hand, if it were intended, and we conclude it was, that the option would have to ripen into a binding contract of sale and purchase prior to the expiration of the period ending January 18th, then, obviously the appellant would have to "exercise" his right within that time. And, concurrent with that exercise is the obligation to pay the sum of $6,000. In *Bourdieu* v. *Baker,* 6 Cal.App.2d 150 [44 P.2d 587], under facts and circumstances not wholly unlike those presented herein, it was held that the burden was upon the optionee to show strict compliance with the terms of the option agreement—including payment or tender of the amount specified within the time stated. It necessarily follows from the rule as stated that the letter of January 14th, wherein appellant merely informed plaintiff he had "elected to go through with and complete" their deal, without the tender of the $6,000, did not constitute strict compliance with and therefore was not due exercise of the option by appellant.

■ The second contention of appellant is that since plaintiff was unable to give a deed to the property free and clear of any cloud upon the title on January 18th, defendant was

not obligated to tender the $6,000 in order to exercise his option to purchase.

In amplification of such contention defendant argues that the payment of the $6,000 and the execution of the note and trust deed by him were conditions concurrent with the delivery of the deed by plaintiff and therefore it was not necessary for him to make the actual tender of the $6,000 on January 18th, at which time plaintiff was unable to give a clear title.

It is well settled that one may contract to sell property which he does not own (*Hanson* v. *Fox*, 155 Cal. 106 [99 P. 489, 132 Am.St.Rep. 72, 20 L.R.A.N.S. 338]; *Brimmer* v. *Salisbury*, 167 Cal. 522 [140 P. 30]), and while at the time of execution of the option contract or the contract of sale he may be unable to furnish a good title, such infirmity does not necessarily mean that when the time for performance has arrived he still would not be able to furnish a good title, nor excuse the optionee from the performance of acts or payment necessary in order to exercise his right of purchase under the option. (*Seeburg* v. *El Royale Corp.*, 54 Cal.App.2d 1 [128 P.2d 362].) The 90-day period given to the plaintiff in which to perfect his title indicates that delivery of the deed was not a condition concurrent with the defendant's acceptance of the offer and the formation of the sale contract. The trial court correctly concluded that the option terminated on January 18, 1946.

The judgment is affirmed.

Thompson, J., concurred.