Filed 10/15/13  Arreola v. Napole CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARIA ARREOLA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>RONALDO NAPOLE et al.,<br><br>    Defendants and Respondents. | B239467<br><br>(Los Angeles County<br>Super. Ct. No. YC064316) |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Dudley W. Gray II, Judge.  Judgment reversed with directions; appeal from order dismissed.

Carpenter, Zuckerman & Rowley and Paul S. Zuckerman for Plaintiff and Appellant.

Green & Hall and John T. Griffin for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff Maria Arreola appeals from a $1 million judgment in her favor entered following an attempted acceptance of her settlement offers by defendants Ronaldo Napole and World Express Tech, Inc. pursuant to Code of Civil Procedure section 998. She also appeals from a post-judgment order denying her motion to set aside the judgment pursuant to Code of Civil Procedure section 473. We conclude that, even though the offers were not valid statutory offers under Code of Civil Procedure section 998, they were valid non-statutory offers, and defendants did not properly accept them according to their terms. Therefore, we reverse the judgment the trial court entered pursuant to section 998.

# FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2011 Arreola filed a complaint for personal injuries. She alleged that she was injured on March 30, 2009 when, while crossing the street in a marked crosswalk, she was struck by a Chevrolet Suburban driven by Napole while he was working for his employer World Express. Defendants answered on May 31, 2011.

On September 1, 2011 counsel for Arreola instructed their legal assistant, Cynthia Carter, to prepare two Civil Code section 998 (section 998) settlement offers in a different case, *Deegan v. Taylor*.[1] Due to clerical error, Carter prepared two settlement offers in the amount of $499,999.99 each in this case instead of *Deegan*, and then gave them to the wrong attorney, Richard Benavidez. Benavidez was a new attorney, was not handling this case, and did not have the discretion to make settlement offers in this case. Nevertheless, Benavidez signed the section 998 offers and served them by mail. Carter signed the proof of service.

---

[1]     This explanation was contained in a declaration by Carter, who did not identify the attorney who gave her the instruction.

Counsel for defendants, John T. Griffin, received the two $499,999.99 settlement offers on September 6, 2011. On September 14, 2011 he called Benavidez to request a 30-day extension of the time for defendants to respond to the offers. Griffin did not reach Benavidez but left a message for Benavidez to call him back. The following day Griffin called Paul S. Zuckerman, whose name also appeared on the settlement offers, and left a similar message. Neither attorney called back, so Griffin called Benavidez again on September 19 and left another message. On September 21, after having failed to receive a return call from either Benavidez or Zuckerman, Griffin sent a letter to Benavidez via fax and mail requesting a 30-day extension to respond to the settlement offers. After again receiving no response, Griffin sent follow-up letters to Benavidez and Zuckerman on Wednesday, September 28, 2011. On Friday, September 30, 2011 Griffin, still having heard nothing from either of Arreola's attorneys, signed notices of acceptance of the section 998 offers to compromise and returned them to Benavidez and Zuckerman by fax and mail.

On Monday, October 3, 2011, after he had signed and returned the acceptances of the two section 998 offers, Griffin received a letter dated September 30, 2011 from Slav Kasreliovich, another attorney in the office of counsel for Arreola, responding to Griffin's September 21, 2011 letter to Benavidez. Kasreliovich's letter, referencing this case, stated that "we do not extend C.C.P. 998 deadlines. If you want to offer the amount demanded in Plaintiff's C.C.P. 998, at a later date, we will consider it. However, at that time, it will be our option to accept or decline. [¶] As it stands, it is your client's option to pay the C.C.P. 998 demand and end the litigation within the statutory time, but we will not extend your time. I hope this addresses all the issues raised in your letter of September 21, 2011."

That same day, October 3, Arreola filed and served a document entitled "Plaintiff's Notice Regarding CCP § 998" signed by Zuckerman and an accompanying declaration by Carter. This advised the court that defendants could not have accepted Arreola's section 998 settlement offers because she had not intended to make them, that defendants' faxed acceptances were invalid, and that any offer was withdrawn. The

3

document stated that because relief under Code of Civil Procedure section 473 is available only after the trial court has entered a judgment or an order pursuant to section 998, Arreola was filing the notice to let the court and defendants know her position.

On October 4, 2011 Griffin received a copy of Arreola's notice purporting to revoke the settlement offers. He also received two new section 998 settlement offers in the amount of $1,499,999.99 each. Believing his acceptance of the two original settlement offers was valid, Griffin filed a motion on October 17, 2011 for entry of judgment pursuant to section 998.

Arreola filed opposition to the motion, restating the claims and arguments in the notice counsel for Arreola had filed on October 3, 2011. In addition, Zuckerman filed a declaration referring to a police report and medical records regarding the seriousness of the accident and Arreola's injuries. He further stated: "During the course of investigating this matter, plaintiff's counsel learned that the defendants collectively possess insurance for this loss of $1,500,000. [¶] . . . In cases like this one, plaintiff's counsel's practice and intent is to make a CCP § 998 offer for the full insurance policy limits. In this case the policy limits are $1,500,000—not $1,000,000. [¶] . . . Plaintiff's counsel was not authorized to serve the two CCP § 998 offers for $499,999.99 each."[2]

At the hearing on the motion the court told the attorney then appearing for Arreola, Donn Christensen, that the court was concerned that there was no declaration from Arreola stating that she had not authorized the initial settlement offers. After hearing argument on the motion and taking the matter under submission, the court granted the motion. On December 16, 2011 the court entered judgment in favor of Arreola and against each defendant in the amount of $499,999.99.

On January 30, 2012 Arreola moved to set aside the judgment pursuant to Code of Civil Procedure section 473, subdivision (b) (section 473(b)), on the ground the court had entered the judgment as a result of counsel's mistake, inadvertence, surprise, and

---

**2** It is unclear why the second section 998 offers to compromise requested $3 million rather than $1.5 million.

4

excusable neglect. Arreola also argued that the judgment was void and improperly entered. Defendants opposed the motion on the grounds that Arreola was not entitled to relief under section 473(b) and that much of Arreola's motion merely repeated arguments she had previously made and that the court had rejected. Arreola also filed a concurrent motion to specially set a hearing on her motion to set aside the judgment. In conjunction with this motion, she submitted a declaration stating that "[a]t no time did I authorize my counsel to serve the two CCP § 998 offers for $499,999.99 each. Further, I did not authorize my counsel to settle this case for the sum of those two offers."

At the hearing on the motion to set aside the judgment, the trial court pointed out that it had already rejected the same arguments at the prior hearing. The court also noted that Arreola did not file a declaration stating that she did not authorize the settlement offer until after entry of judgment. After hearing argument from both sides the court denied the motion. Arreola filed a timely appeal from the judgment and the order denying relief under section 473(b).

## DISCUSSION

Section 998, subdivision (b), provides that "any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. Any acceptance of the offer, whether made on the document containing the offer or on a separate document of acceptance, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party." The statute further provides: "(1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. . . . [¶] (2) If the offer is not

5

accepted prior to trial . . . or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn . . . ." (§ 998, subd. (b).)

Arreola's original section 998 settlement offers stated: "If you accept this offer, please date and sign the accompanying Notice of Acceptance *and file* the Offer and Notice of Acceptance with the above-entitled Court prior to trial, or *within 30 days* after the offer is made, whichever occurs first; otherwise, said offer will be deemed withdrawn." (Italics added.) It is undisputed that defendants did not file the offers and notices of acceptance with the trial court within 30 days after Arreola made the offers. It is Arreola's position that because defendants signed the section 998 offers within the 30-day period but did not file the offers and notices of acceptance with the court until after expiration of the 30-day period, the section 998 offers expired by their terms before defendants accepted them. Defendants argue that Arreola's position "is absolutely contrary to [section] 998"and that her requirement that defendants also file the notice of acceptance with the court "impose[s] a requirement that simply does not exist in [section] 998."

Arreola relies on the principle of general contract law that "[i]f a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." (Civ. Code, § 1582.) Thus, under general principles of contract law, "[t]he act or acts which constitute an acceptance of an offer . . . are determined by the terms of the contract itself, and where, as here, the acceptance . . . is by the terms of the contract to be made in a particular manner, it must be strictly so made in order to constitute a valid acceptance." (*Callisch v. Farnham* (1948) 83 Cal.App.2d 427, 430; see *Amer. Aero. Corp. v. Grand Cen. Aircraft Co.* (1957) 155 Cal.App.2d 69, 79 ["An acceptance, to result in the formation of a binding contract, must meet exactly, precisely, and unequivocally the terms proposed in the offer."] "Acceptance is the 'manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.' (Rest.2d Contracts [(1981)] § 50.)" (*In re First Capital Life Ins. Co.* (1995) 34 Cal.App.4th 1283, 1288.) Relying on these principles of contract law, Arreola argues

6

that because the offers required defendants not only to sign the offers but to file the offers and notices of acceptance within 30 days, defendants did not validly accept the offers pursuant to their terms because defendants did not file the offers and notices of acceptance within 30 days.

Several courts have discussed the relationship between section 998 and general contract law. In *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, the Supreme Court discussed this relationship in the context of deciding whether a section 998 offer is revocable within the 30-day period. The court began by noting that section 998 does not specify whether an offer is revocable or irrevocable during the 30-day period. (*Id*. at p. 277.) Under contract law, however, an offer may be revoked at any time prior to acceptance. (*Id*. at p. 278; see Civ. Code, § 1586.) The court concluded that "[i]n light of this firmly established principle of contract law, it is clear that if the Legislature intended to make section 998 offers irrevocable, it would have expressly and unequivocally said so. It did not. In the absence of such language, the general rule that offers may be revoked prior to acceptance should apply." (*Cobb*, *supra*, at p. 278, fn. omitted.) The court also observed that "[s]ince section 998 involves the process of settlement and compromise and since this process is a contractual one, it is appropriate for contract law principles to govern the offer and acceptance process under section 998." (*Id*. at p. 280.) The court added the caveat that "general contract law principles should apply to section 998 offers and acceptance only where such principles neither conflict with the statute nor defeat its purpose," which is to encourage the settlement of lawsuits prior to trial. (*Ibid*.) The court concluded that section 998 offers may be revoked during the 30-day period. (*Id*. at pp. 283-284.)

The Supreme Court recently reaffirmed these principles in *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, where the court addressed the effect of multiple settlement offers on the recovery of expert witness fees under section 998. The Supreme Court stated that "[w]hen the language of section 998 does not provide a definitive answer for a particular application of its terms, courts may consult and apply general contract law principles. Because the process of settlement and compromise is a

7

contractual one, such principles may, in appropriate circumstances, govern the offer and acceptance process under section 998. [Citation.]" (*Id*. at p. 1020.)

In determining whether to apply contract law principles, the court considers several factors. First, the court looks at whether "the policy of encouraging settlements is 'best promoted'" by applying the contract law principles. (*Martinez v. Brownco Construction Co.*, *supra*, 56 Cal.4th at p. 1020.) Second, contract law principles "will not be found to govern if [their] application would conflict with section 998 or defeat its purpose. [Citations.]" (*Ibid*.)[3] Third, the court considers "whether applying section 998 in a particular manner serves the public policy of compensating the injured party." (*Id*. at p. 1021.)[4] "Finally, a court should assess whether the particular application injects uncertainty into the section 998 process. If a proposed rule would encourage gamesmanship or spawn disputes over the operation of section 998, rejection of the rule is appropriate. [Citations.]" (*Ibid*.)[5]

---

[3]     For example, in *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, the court declined to apply the contract law rule that a counteroffer operates as a rejection of the original offer to section 998 because the general counteroffer rule would tend to stifle negotiations and discourage settlement. The court in *Poster* concluded that, even after making a counteroffer, an offeree may accept a section 998 offer any time before its revocation or expiration. (*Id*. at pp. 271-272; see *Martinez v. Brownco Construction Co.*, *supra*, 56 Cal.4th at p. 1020.)

[4]     The court in *T. M. Cobb Co. v. Superior Court*, *supra*, 36 Cal.3d at page 282, concluded that allowing revocation of a section 998 offer serves this policy by "provid[ing] flexibility when parties discover new evidence bearing on the plaintiff's injuries or the defendant's culpability." (*Martinez v. Brownco Construction Co.*, *supra*, 56 Cal.4th at p. 1021.)

[5]     The court in *Poster* rejected the general counteroffer rule in part "[t]o promote clarity over the status of a section 998 offer," noting "the difficulty of discerning between a mere inquiry as to the possibility of different terms (which would leave an offeree free to accept an outstanding [section] 998 offer) and a true counteroffer (which would operate as a rejection of the statutory offer and prevent its later acceptance)." (*Poster* [*v. Southern Cal. Rapid Transit Dist.*, *supra*, 52 Cal.3d] at p. 272.)" (*Martinez v. Brownco Construction Co.*, *supra*, 56 Cal.4th at p. 1021.)

For example, in *Martinez* the court concluded that the contract law principle under which the last offer extinguishes a prior offer should not be applied to section 998 settlement offers, and that therefore the plaintiff was entitled to recover expert witness fees from the date of the first section 998 offer. The court stated that this conclusion promoted the public policy of compensating injured parties "by according parties flexibility to adjust their settlement demands in response to newly discovered evidence." (*Martinez v. Brownco Construction Co.*, *supra*, 56 Cal.4th at p. 1026.) The court also concluded that not applying the contract rule would avoid uncertainty or confusion and would be easy to apply. Similarly, because the purpose of section 998's provisions regarding the means of acceptance was to "eliminat[e] uncertainty in the acceptance of section 998 offers" by requiring the offer to contain an acceptance provision and "requiring the acceptance to be made by a signed statement," cases addressing these provisions have held that a section 998 offer that does not contain an acceptance provision is invalid. (See *Boeken v. Philip Morris USA Inc.* (2013) 217 Cal.App.4th 992, 1003; *Perez v. Torres* (2012) 206 Cal.App.4th 418, 425-426; *Puerta v. Torres* (2011) 195 Cal.App.4th 1267, 1273.) If a party could claim that an offer without an acceptance provision were valid, "[u]ncertainty and confusion will become the rule." (*Perez*, *supra*, at p. 425.) Establishing "a bright-line rule invalidating an offer when it omits an acceptance provision, or any other statutorily required provision, . . . will eliminate confusion and uncertainty." (*Id*. at pp. 425-426.)[6]

We agree with defendants that the contract law rule embodied in Civil Code section 1582 does not permit a party making a section 998 offer to add requirements for acceptance of the offer to those set forth in section 998. Allowing the offeror to impose additional acceptance requirements would conflict with goals of section 998, conflict

---

[6]     The case cited by defendants, *Hofer v. Young* (1995) 38 Cal.App.4th 52, predates the 2005 amendment to section 998 that added the language requiring that a section 998 offer include "a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted." (§ 998, subd. (b).)

with the statutory language mandating the specific means by which a section 998 offer can be accepted, and introduce additional levels of uncertainty and complication into the section 998 process. For example, the validity of an acceptance and the formation of a settlement agreement under section 998 would depend on whether a messenger made it to the courthouse by the close of business on Day 30. It would also lead to litigation over whether the offeree complied or substantially complied with the additional acceptance terms, the effect of any non-compliance, and whether the non-compliance was material or non-material. "Attorneys will wonder if the" addition of acceptance requirements to the "statutorily required provision[s] renders the offer or acceptance invalid or is merely a harmless error." (*Perez v. Torres*, *supra*, 206 Cal.App.4th at p. 425.)

Because Arreola's section 998 included the additional term that defendant file the notice of acceptance with the court within 30 days, it did not qualify as a section 998 offer, and therefore, had the parties gone to trial, it would not have implicated the cost-shifting provisions of section 998. (See *Perez v. Torres*, *supra*, 206 Cal.App.4th at pp. 421, 426 [because the defendant's offer did not include the statutorily required acceptance provision, it was an invalid section 998 offer and the defendant was not entitled to recover costs]; *Marina Glencoe, L.P. v. Neue Sentimental Film AG* (2008) 168 Cal.App.4th 874, 880 [offer revoked before the end of the statutory period "was no longer an 'offer' for purposes of the cost benefits of section 998"]; *Hurlbut v. Sonora Community Hospital* (1989) 207 Cal.App.3d 388, 410 [joint settlement offer invalid under section 998 did not entitle the plaintiff to recover expert witness fees under that section].)

The fact that Arreola served a defective section 998 offer, however, did not mean it was an offer that defendants could not accept. It only meant that Arreola could not recover her costs under section 998 if the jury awarded her more than $999,999.98 (or, more accurately, $499,999.99 against each defendant). Defendants could decline to accept the offer without worrying about the possibility of the consequence under section 998 of having to pay Arreola's costs if she recovered more than $999,999.98 at trial. (See *Marina Glencoe, L.P. v. Neue Sentimental Film AG*, *supra*, 168 Cal.App.4th at

10

p. 880 [a "section 998 offer . . . revoked prior to the expiration of the statutory period, . . . no longer functions as an 'offer' for purposes of the cost benefits of section 998"].) But an offer that does not qualify as an offer under section 998 is still an offer, and defendants could only accept the offer according to its terms, which, on this record, defendants did not do. Therefore, the trial court erred by entering judgment in this case pursuant to section 998.

## DISPOSITION

The judgment is reversed. Arreola's appeal from the order denying her section 473(b) motion is dismissed as moot. Arreola is to recover her costs on appeal.

SEGAL, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.